*1667 The opinion of the court was delivered by
Breaux, J.
Plaintiff, owner of a cane growing plantation in the parish of St. James, claims damages of the defendant, owner of a central sugar refinery in the parish of East Baton Rouge, growing out of the failure to receive delivery of the plaintiff’s crop of two hundred and sixty acres of sugar cane grown on his plantation.
The contract which plaintiff charged the defendant failed to execute was signed on the 24th day of September, 1894, binding the plaintiff to deliver his cane in car loads to the defendant. The plaintiff also bound himself to windrow his cane whenever it would become necessary for its protection and safety from cold weather. It was stipulated that he was to begin with the delivery of his cane on or about the twenty-fifth day of October, at the rate of seventy-five tons a day, unless prevented by unfavorable weather or other equally good cause.
The defendant bound itself on its part to pay the plaintiff for every two thousand pounds of cane delivered f. o. b. at the defendant company’s side track (where the cane was to be weighed), ninety cents for each cent that prime yellow clarified sugar would sell for, as made to appear by the average official quotation, at times stated in the contract, of the New Orleans Sugar Exchange. Provision was inserted in the contract for weekly settlements, and the bounty was to be paid when collected.
The stipulation was, regarding the machinery, in case of a temporary break down or any other accidental occurrence delaying manufacture or causing a suspension or partial suspension of sugar making, the defendant was to have the option of stopping the hauling and the delivery of cane; and, further, in case of a permanent break down of the machinery for the season or any accident caused by fire or the want of water, labor strikes, or any other cause beyond the control of the defendant company, the contract was to be at an end, as relates to all cane not previously delivered.
Under this contract the plaintiff was to begin to deliver cane on the 25th of October.
lie was delayed, as the sugar house was not in a condition to operate at that time. The first installment of cars was placed on his side track about the 31st of October and his first shipment was made on the 1st of November of five ears; on November 7th, four cars; November 8th, three cars; November 10th, four cars; containing about three hun *1668 dred tons net weight. .During that period plaintiff swears that he was ready to deliver seventy-five tons a day, and that he protested against the non-receipt of cars for the shipment of his crop.
On the 12th day of November, plaintiff wrote to the defendant: “I certainly cannot be held responsible for the neglect of the railroad people or the break down of your factory. Shipment No. 2 stood on my side track for three days, as also the last, and the railroad people claim that they were instructed by you not to haul cane. To-day I have no cars at all. At the rate we are going my crop will most probably be left in the field.”
Plaintiff swears that he complained several times of his want of cars to the representative of the company, and that in reply he was told by the latter that the sugar house did not work satisfactorily, but that everything would be all right after a while.
With reference to windrowing his cane this witness swore he commenced about the 18th and finished about the 23rd of the same month, and that it was in perfect condition when, it was windrowed.
Another witness for plaintiff testified that his contract was similar to plaintiff’s, and that the defendant company was to deliver cars for the transportation of the cane; that there was continual delay caused by the inability of the company to handle the cane; and that “generally, we feel, whenever we start grinding, that we ought to take off the crop by the 'first of January. We start in October, and those who have small crops start earlier in order that they can wind up their crops by the first of January.”
To prove defendant’s alleged mismanagement an answer, filed in another suit, instituted by another plaintiff, was introduced in evidence in the case here. The plaintiff in the suit in which the answer was filed was the superintendent in the operation of the plant, who brought suit for his salary. The defendant in that case charged that plaintiff’s unskilled and defective supervision of the erection of defendant’s refinery building and machinery resulted in the company’s inability, for many days during the most active part of the sugar season, to operate the plant.
We deem it proper to state as part of our statement of the facts that the vice-president and general manager of the company denies that he made any agreement for the transportation of his (plaintiff’s) cane.
He stated that he had informed one of the sugar planters residing *1669 near plaintiff that he had no objection to the planters, with whom defendant contracted for cane, shipping their cane elsewhere during the time the defendant was unable to take the cane. This, it appears, was mentioned to the plaintiff, who afterward sold part of his crop to another owner of a sugar house, at not enough, however, to escape from the loss he incurred.
Willy Malareher sworn:
“Q. — Did you hear Mr. Yredenburgh’s conversation in reference to the purchase of his cane?
“A. — Mr. Yredenburgh then told him (Mr. LaPlace) he could have the balance of his crop; it was all a verbal contract.
“Q. — This was made in the middle of the month?
“A. — In the middle of November.
“Q. — It was at that time that Yredenburgh told him that he could have the balance of the crop?
“A. — That was the time they all contracted. His price did not suit us very well, and we contracted to sell the balance of the cane that we .could not ship to Baton Rouge. The fact is, we would have lost if we had waited. While I was hauling at Oharbonnier, that is, the last week of November or the first of December, we were then notified that Baton Rouge was clear and we could ship. I asked Mr. Yredenburg if he was going to ship to Baton Rouge.”
Plaintiff replying to the question, said he would not. This witness said that he informed defendant of this fact at the time.
Other witnesses testified that there were delays in hauling the cane, also that plaintiff, about the 1st of December, positively refused to deliver his cane to defendant.
Reames, conductor of the cane train, swore that he was instructed by plaintiff to take the cane to La Place. These were cars that had been sent by defendant to plaintifE’s switch.
This testimony is corroborated by McDonald, the flagman of the train.
He left three cars at plaintiff’s switch. They were loaded, and, under instruction of plaintiff, sent to another than defendant’s sugar-house.
Webb, the manager for defendants, swore that the “day after having received a letter from plaintiff he said to Reames and McDonald; this gentleman (Yredenburg) is anxious for cars, why don’t you give them to him? McDonald smiled and said, Mr. Yredenburg says he won’t *1670 ship you. any more cane. I asked him why not. He said he did not know; that Mr. Vredenburgh had said he would not ship any more cane to them.
“Q. — Did Mr. Reames and Mr. McDonald notify you of the refusal of Mr. Vredenburgh to ship you cane after placing cars on the siding as stated bjt them in their testimony ?
“A. — They did. A few days after this the trainmaster, Bellows, was at our plant, and I asked him why he did not bring in the cane from Colomb Park spur, which was Mr. Vredenburgh’s cane. He stated that they were compelled to take the cane where the planters wanted them to. Mr. Vredenburgh had positively refused to ship to us.”
On the 17th day of that month defendant notified the cane producers with whom it had contracted that their sugar house was not in a condition to continue operations, and that no more cane would be received. A few days after there was a' freeze which was cold enough to kill the cane. In consequence, it became necessary to windrow the cane.
In February following there was a snow storm which completely destroyed the cane.
The judge of the district court pronounced judgment for defendant.
From that judgment plaintiff prosecutes this appeal.
Opinion.
The character of the contract is unusual, and is silent in an important particular. Each of the parties to the contract was dependent upon the railroad company to carry out its part of the agreement, and yet not one word was said at the time, in so far as the contract discloses, as to who would see to securing needful transportation from the railroad company.
In our judgment, all the circumstances none-the-less point to the defendant, as the agent of all concerned, and that it was expected to see to the transportation of the cane. Plaintiff and defendant appear to have placed that interpretation upon their agreement. Defendant, we gather from the record, dealt with the officers of the railroad company. They ordered the shipment of cars to different stations to receive the cane of the producers from whom they bought. This appears to have been so well understood that defendant’s manager entrusted railroad employes with requests to planters to ship or not to ship as occasion required.
*1671 This conclusion does not, in our opinion, of itself, fix a responsibility on the defendant. There were reciprocal, stipulations in the contract. While it was incumbent on defendant to receive the cane, it devolved on plaintiff to exhaust every reasonable means to carry out the contract in so far as he had obligated himself. True, there had been delays on the part of the defendant, but these delays did not justify plaintiff in stopping all shipments of cane. When informed that the way for shipment was clear, he emphatically declared that he would not deliver any more cane to the defendant. Cars from the defendant’s sugar house were placed on his switch in order that he might fill them with his cane. This he would not do.
The delays to which plaintiff ha'd been subjected were doubtless annoying and moved him to be slow in returning to the defendant company to deliver to it cane under the terms of the contract.
We, however, after an attentive examination of the contract and of the evidence, have not arrived at the conclusion that, in a legal point of view, these delays gave plaintiff a legal ground to entirely stop shipping, and, after such refusal to deliver his cane, to recover damages.
As defendant was looked to for transportation of the cane, the ears sent to his switch under the orders of the defendant for his cane, were notice enough of readiness to continue receiving the cane as agreed under the contract.
In a commutative contract the one seeking to recover for inexeeution of its terms, must have performed his part, or, at least, offered to discharge his obligation.
With the evidence before us we must conclude that plaintiff did not avail himself of the opportunity offered by defendant to send cane as promised.
Differing from the case of Green vs. Fonbene, 2nd Ann., 958, and from Garcia vs. Champomier, 8th La., 519, cited by plaintiff’s counsel, the defendant here never declared its inability to fulfill its agreement, and when there was delay, plaintiff took no steps to hold it bound or to fix its responsibility by active measures on his part.
Plaintiff insists that the answer in the suit of Deming vs. The Baton Rouge Sugar Company is a judicial admission by the defendant of the causes which brought about delays and finally suspension of defendant’s work in 1894.
It must be borne in mind that plaintiff was not a party to the suit in *1672 question, and while his answer was admissible, it did not have the effect of concluding' the defendant.
“Allegations in a petition and an affidavit for an attachment are admissible only in evidence, but not conclusive in favor of one not a party to the suit; hence, such allegations are open to examination and correction by proof of error.” 1 Greenleaf, Sec. 204 et seq.; Mallard and Armistead vs. Carpenter, 6th Ann., 397; Lachman & Jacobi vs. Block & Bro., 47th Ann., 505.
There was evidence offered to correct asserted error which was discovered, it was said, after the answer had been filed and the suit, in which it was, compromised.
Be this as it may, the mismanagement at defendant’s factory did not have the effect of relieving plaintiff from the necessity, under the circumstances here, of delivering or attempting to deliver his cane in accordance with the contract.
We leave this branch of the case with the statement that, in our judgment, there was failure on the part of the defendant to deliver cars promptly or see that they were delivered to the plaintiff to be loaded.
None the less, in order that plaintiff may recover, must it not appear that plaintiff (Vredenberg), when cars were delivered, did all in its power (reasonably) to load them and return them to the factory in order at least to minimize the damages?
This brings to us the questions growing out of the permanent suspension of the operations of the defendant factory on the 17th day of December, owing to the settling of the factory caused by the development of springs under the foundation.
We have noted the broad provision of the contract regarding any disability of defendant which might arise. In our judgment, the accident proven came within the terms of the provision, “or any other accident”, words inserted in the contract, which covered accident to the building as well as to the machinery. The accident, in our view, affected both the machinery and the building. The evidence shows that it was dangerous to remain in the building or to operate the factory in the condition in which it was.
The plaintiff had, as reviewed, by each of the contracting parties, made evident by the conduct of each, the whole of the cane grinding season within which to buy defendant’s cane. During the season there were breakdowns and delays, for some of which the contract made pro *1673 vision. There was at times, unwillingness on the part of plaintiff to deliver his cane, when the accident of the 17th of December put an end to all hopes of being able to continue with the work.
But it is contended on the part of the plaintiff, as we take it, that the words “for any other cause” do not include any other causes than those set forth just preceding those words, and that under the clause defendant had no right to suspend operations as the cause alleged was not vis major.
We have given attention to the clause of the contract, regarding causes provided for suspension of operations, and have not found it quite as limited as plaintiff would have it.
It was obvious that each party was anxious to protect his interest, and to that end inserted provisions looking, on the one hand, to a suspension of the sales, in case of stress of weather, “or other uncontrollable circumstances”, while on the other hand, the defendant inserted provisions authorizing it to suspend cane grinding operations in case the machinery became disabled or any other accident supervened which delayed manufacture or caused a suspension or partial suspension of sugar making; then the defendant was to have the right to refuse to receive cane in part or wholly during the suspension, and in case the machinery became permanently disabled for the season from making sugar, in consequence “of fire”, “want of water”, break down”, “labor strikes” “or any other cause” beyond the control of the defendant; then the contract to become null and void for all cane not previously delivered.
This covers an aggregation of causes. Any uncontrollable, overpowering cause was enough to warrant a suspension of sugar making operations. Here, there was disability as to the machinery, for the building itself was in a dangerous condition. Skilled mechanics advised that it was unsafe to remain in the building, as it might unexpectedly fall.
The rule ejusdem generis does not, in our view, militate against defendant’s position.
Prior to December 17th, 1894, there was failure on the part of plaintiff to place the defendant in default.
After that date, the terms of the contract gave to defendant, for cause, power to suspend the operation of its sugar house.
*1674 The law and evidence being in favor of the defendant, it is ordered, adjudged and decreed that the judgment is affirmed.