NEWELL and another, Respondents, vs. NEW HOLSTEIN CAN-
NING COMPANY, Appellant.

*November 17—December 11, 1903.*

*Contracts: Construction: Extrinsic evidence of intention: Excusing
nonperformance: Destruction of crop by frosts: Entire con-
tract: Tender of part: Liquidated damages.*

1. Where a written contract is plain and definite in its terms and
without ambiguity, evidence as to the contents of letters which
passed between the parties prior to its making is not admis-
sible to show the intention of the parties or add to the agree-
ment a condition not embraced within its terms. Thus, in an
action upon written contract for the sale of tomatoes to be
packed by the vendor, such evidence is *held* inadmissible to
show that the parties contemplated, as a condition of the agree-
ment, that the tomatoes were to be raised on the vendor's
fields or in the neighborhood of its cannery.
2. In a contract for the sale of tomatoes to be canned by the vendor,
a provision that "if by the destruction of the cannery by fire,
or if on account of strikes, or from any other cause over which
the seller has no control, he is prevented from performing this
contract, he shall not be liable for any damages for such fail-
ure," does not include the destruction by frost of the tomato
crop on the vendor's fields or in the neighborhood of its can-
nery; but leaves it the duty of the vendor, notwithstanding
such destruction, to make all reasonable effort to secure the
necessary fruit and pack it at its cannery.
3. Two ineffectual inquiries in the market,—one at a point eleven
miles from the cannery, and one at a place forty-six miles
therefrom,—without other efforts to procure fruit, did not con-
stitute a performance of the vendor's duty in that behalf, or
excuse nondelivery of the tomatoes according to the contract.
4. A contract for the delivery of 2,000 cases of tomatoes to be
canned by the vendor, with certain specific provisions by
which either party might decrease such quantity to seventy-
five per cent. thereof without paying damages, and might fur-
ther reduce the quantity upon giving notice by a certain date
and upon payment of certain stipulated damages, is *held* to be
an entire contract, so that the vendee was not obliged to re-
ceive a part of the goods, when tendered with the understand-
ing that the vendor did not intend to deliver the whole.

5. Where no notice was given as provided of intention to reduce
the quantity to be delivered below seventy-five per cent. of that
named in the contract, the vendor cannot avail himself of the
stipulation as to liquidated damages.

APPEAL from a judgment of the circuit court for Calumet
county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Respondents are engaged in the wholesale grocery business
in Minneapolis, Minnesota. Appellant is a corporation oper-
ating a canning factory at New Holstein, Calumet county,
Wisconsin. On April 24, 1901, the parties made the con-
tract out of which this case arises. It provided for the de-
livery of 2,000 cases standard three-pound tomatoes at eighty
cents per dozen; terms, sixty days, or one and one half per
cent. for cash in ten days; quality 1901 pack; cases to be
well filled with red ripe fruit, etc. The provisions material
to this cause were as follows:

"It is further understood and agreed by the parties to this
contract that if the seller should deliver only seventy-five per
cent. of the quantity stated the purchaser shall accept that
amount in full settlement of this contract. If the seller
should deliver less than seventy-five per cent. for any cause
other than one over which he has no control as hereinbefore
specified, then the seller shall pay the purchaser seven and
one half cents per dozen on such quantity, but must, except
for such causes, deliver fifty per cent. of the original pur-
chase. The purchaser shall have the privilege of reducing
the quantity named in this contract to seventy-five per cent.
of the original purchase without payment of any damages,
and shall also have the privilege of further reducing the
quantity on payment of seven and one half cents per dozen,
but must accept not less than fifty per cent. of the original
purchase." "In case either of the parties to this contract
wish to avail themselves of the privilege of decreasing the
quantities below seventy-five per cent. of the original pur-
chase, notice must be given not later than July 1st, 1901."
"If by the destruction of the cannery by fire, or if on ac-
count of strikes, or from any other cause over which the

seller has no control, he is prevented from performing this contract, he shall not be liable for any damages for such failure."

Appellant raised fruits for canning, and to fill the orders for 1901 planted and cultivated about thirty-five acres of tomatoes, and expected to make from 3,000 to 3,500 cases, sufficient to fill the season's orders. On August 26, 1901, it commenced to can tomatoes, but ceased because the fruit was not fully ripened. September 7th and 8th a sharp frost killed appellant's tomato vines, and another heavy frost on September 18th and 19th totally destroyed the fruit. Appellant had put up 400 cases of sound goods before the frosts, and thereafter 200 cases of frost-bitten goods. This amounted to about fifteen per cent. of their orders. October 5th its secretary notified respondents of the frost, and of its inability to fill the contract, and offered to deliver 300 cases. Respondents refused to accept this amount, and demanded a delivery of the whole. Upon appellant's refusal to comply with this demand this action was brought to recover damages for breach of the contract. Judgment was given for the sum of $1,104.72 in favor of respondents, and from that judgment this appeal is taken.

*J. E. McMullen,* for the appellant.

For the respondents there was a brief by *Bloodgood, Kemper & Bloodgood* and *Welch, Hayne & Hubachek,* attorneys, and *Jackson B. Kemper,* of counsel, and oral argument by *Jackson B. Kemper.*

SIEBECKER, J. The questions arising on the errors assigned in the record require a construction of the agreement sued upon. Under this agreement appellant sold respondents 2,000 cases standard three-pound (can) tomatoes at eighty cents per dozen, of the quality 1901 pack, cases to be well filled with red ripe fruit, to be delivered when packed.

Among other agreements, it provided that either party might reduce the quantity covered by the contract to fifty per cent. of the order, but that notice of such reduction must be given not later than July 1, 1901, and that

"if by the destruction of the cannery by fire, or if on account of strikes, or from any other cause over which the seller has no control, he is prevented from performing this contract, he shall not be liable for any damages for such failure."

Appellant complains of the trial court's ruling in refusing to receive the evidence of the contents of letters which passed between appellant and the firm of brokers through whom respondents made the contract. This testimony was apparently offered to put the court in possession of facts and circumstances: First, to show the intention of the parties in making the contract; and, secondly, to show that both parties contemplated, as a condition of this agreement, that the tomatoes sold were to be raised on appellant's fields, situated near its canning factory. The evidence offered tended to prove matters aside from the surrounding facts and circumstances of the parties to the contract which is proper to aid the court in construing it. This evidence would add an article to the agreement not expressed or covered by its terms.

The terms of the contract are plain and definite in meaning in their literal sense, and also when applied to the subject-matters covered by the transactions. If an ambiguity exists in the contract in either respect, then "evidence of the circumstances under which the contract was made is proper to enable the court, in the light thereof, to read the instrument in the sense the parties intended, if that can be done without violence to the rules of language or of law." *Johnson v. Pugh,* 110 Wis. 167, 85 N. W. 641, and cases cited. This rule does not, however, permit evidence to be introduced of communications respecting it, made prior to and explanatory of the writing. To admit such evidence would

violate this well-established rule, and add a condition to the agreement clearly excluded by its terms. The action of the trial court is sustained by well-known rules governing written contracts.

One of the defenses to excuse delivery of the tomatoes specified in the contract was that appellant was prevented from performance owing to unusual frosts in the month of September, whereby their fruit and the crop in the immediate vicinity and the eastern part of the state were destroyed; and on that account it had raised no tomatoes, nor could it procure any in the vicinity of the factory to comply with this undertaking. Does this present a state of facts which relieves the company from performance of the contract? It is claimed the provision that "if by the destruction of the cannery by fire, or if on account of strikes, or from any other cause over which the seller has no control, he is prevented from performing this contract, he shall not be liable for any damages for such failure," covers and includes the destruction of the tomato crop by frost, as shown by the evidence, and excuses appellant from full performance of the agreement. There is no allusion in the contract to any particular source from which these tomatoes were to be taken except that they should be of the 1901 pack of appellant's cannery. Reading the material provision in the light of the facts and circumstances under which it was made, it seems a reasonable and natural conclusion that the parties did not intend that appellant was undertaking to sell and deliver tomatoes to be grown upon a particular field, or in the immediate neighborhood of the cannery. Had the sale been to deliver a crop grown on appellant's field, or in the neighborhood of the cannery, then the destruction by frost of the crop so specified might be held to be an excuse for the nonperformance of the undertaking under the rule that the promise to deliver a specific article depended on the assumed existence of it at the time of performance, and that it was destroyed

without its fault, rendering performance impossible. Appellant, however, was not restricted under the contract to such field or neighborhood to procure tomatoes to fill the contract. It had the right to go into the open market and purchase tomatoes of the kind and quality specified in the agreement, pack them at its cannery, and deliver them to respondent under the terms of the contract. It therefore was its duty to make all reasonable effort to secure the necessary fruit, and pack it at its cannery, to enable it to comply with its promise. The question arises, Does the evidence tend to show that appellant took the necessary steps to comply with this obligation?

It is undisputed that the tomato crop on its field and in the immediate vicinity of the cannery was destroyed by frost on the 18th or 19th of September. It is testified that this frost extended over the eastern portion of the state. The material part of the evidence on this subject is the testimony of the secretary of the company. He states that the efforts made to secure tomatoes for packing at appellant's cannery were limited to two inquiries in the market—one at St. Nazianz, eleven miles from the cannery; and the other at Appleton, forty-six miles from the factory. No other efforts were made to procure the fruit in other portions of adjoining territory or in the open market. For aught that the evidence discloses, appellant might have secured all the tomatoes needed in the market within a reasonable distance from the factory, making it feasible and practicable to buy the fruit and transport it to the cannery for the purpose of this undertaking. Under this state of facts and circumstances, no grounds were established constituting a legal excuse relieving appellant from performing its obligations under the agreement, and respondents had a right to insist on performance. These conclusions result in affirmance of the action of the trial court in directing a verdict for respondents. *Johnson v. Pugh,* 110 Wis. 167, 85 N. W. 641; *Nilson v. Morse,*

52 Wis. 240, 9 N. W. 1; *Sigerson v. Cushing,* 14 Wis. 527; *Jackowski v. Illinois S. Co.* 103 Wis. 448, 79 N. W. 757; *Boden v. Maher,* 105 Wis. 539, 81 N. W. 661; *Hesser-M.-R. Coal Co. v. La Crosse F. Co.* 114 Wis. 654, 90 N. W. 1094; *Anderson v. May,* 50 Minn. 280, 52 N. W. 530; *McGehee v. Hill,* 4 Port. 170; 1 Am. & Eng. Ency. of Law (2d ed.) 590, and notes.

Appellant tendered 300 cases of tomatoes in part performance of the contract. On this point we are of the opinion that the agreement is an entire one, and respondents were not obliged to receive a part of the fruit when it was tendered with the understanding that appellant did not intend to deliver the whole. Sutherland, Damages (2d ed.) §§ 651, 652; *McGehee v. Hill, supra.*

An exception is preserved, upon which it is urged that the court allowed an excessive amount of damages. It is insisted that one of the articles in the agreement stipulates that the damages for the nondelivery of any quantity less than seventy-five per cent. should be seven and one half cents per dozen cans as liquidated damages. This, however, is conditioned upon the giving of notice by the party seeking to avail himself thereof to the other party not later than July 1, 1901. No such notice was given. Neither party can therefore invoke this right. The judgment of the circuit court was properly awarded.

*By the Court.*—The judgment of the circuit court is affirmed.