**P. PASTENE & CO., Inc., v. GRECO CANNING CO.**

(District Court, N. D. California, Second Division. August 30, 1920.)

No. 16076.

1. Sales ☜172—Must be reasonable effort to obtain product to exempt from liability for nondelivery under "short pack" provision of contract.

In an action for short delivery under a contract by a canning company for sale of a stated number of cases of a tomato product from the season's pack, to constitute a defense under a provision of the contract that "in case of short pack seller agrees to make pro rata delivery," it is not sufficient to show a shortage of the tomato crop in the immediate vicinity of defendant's plant, but it must be further shown that it could not have obtained them within a reasonable distance.

2. Sales ☜172—Trouble with machinery is not a "circumstance beyond control," so as to excuse for nonfulfillment of contract for product.

Trouble with machinery in the plant of a canning company *held* not to exempt it from liability for short delivery under a contract for sale

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and delivery of a stated quantity of its product, as a "circumstance beyond its control."

**3. Contracts ⊛⟳170(1)—Acts constituting construction by parties must be done with full knowledge of facts.**

To constitute a binding construction by the parties of a written contract, it ought to appear with reasonable certainty that the acts of both parties were done with knowledge, and in view of a purpose at least consistent with that to which they are sought to be applied.

At Law. Action by P. Pastene & Co., Incorporated, against the Greco Canning Company. Judgment for plaintiff.

Thomas, Beedy & Lanagan, of San Francisco, Cal., for plaintiff.
John L. McNab, of San Francisco, Cal., for defendant.

VAN FLEET, District Judge. Action to recover for breach of contract to manufacture and deliver 3,000 cases of Salsa De Pomidoro, or Italian tomato paste, in the crop season of 1916. There was delivery under the contract of but 665 cases, or about 22 per cent. of the quantity contracted for, and the action proceeds upon the theory that the plaintiff is entitled to recover upon the basis of a full and complete delivery of the quantity contracted for.

The defense is based on this provision of the contract:

"In case of short pack, seller agrees to make pro rata delivery. If seller should be unable to perform all its obligations under this contract by reason of a strike, fire, or other circumstances beyond its control, such obligations shall at once terminate and cease."

The defendant's claim is, in substance, that there was a "short pack," within the meaning of the contract, resulting partly from a very considerable failure in the tomato crop by reason of weather conditions, and partly from trouble with defendant's processing appliances, which caused great delay and difficulty; that by reason of these conditions defendant was compelled to make a pro rata delivery; that plaintiff received its full pro rata of the pack actually made, which was all it was entitled to. The different elements of this defense will be considered.

[1] 1. As to a failure of the crop, it is sufficient to say that the evidence, which is more or less conflicting, is not sufficient to sustain that feature of the defense—at least to any such extent as that claimed. There was evidence tending to show that early rains and frosts damaged the crop to some extent, and thus decreased production, particularly in the Santa Clara valley, the territory more immediately surrounding defendant's plant; but it was not only very indefinite as to the real extent of the injury in that valley, but wholly so as to the effect in other fields of production in adjacent counties, where it appeared the tomato is largely grown, and, there being nothing in the terms of the contract requiring that the goods contracted for be produced from tomatoes grown in any particular section, it was essential to sustain this defense, even had there been a more complete failure in the immediate field, to show that the fruit could not have been secured in

other parts of the state in quantity to fulfill the contract. Newall et al. v. New Holstein Canning Co., 119 Wis. 635, 97 N. W. 487. The evidence discloses no such effort in this respect as would establish inability to get the fruit elsewhere, or to excuse the failure to perform the contract to the great extent shown. To the contrary, I am satisfied that, taking all the evidence into consideration and giving the defendant the benefit of every intendment and deduction making in its favor as to failure or damage to the crop, the court would be wholly unwarranted in finding the defendant justified in abating more than 20 per cent. from a full delivery under its contract.

[2] 2. As to the delay and difficulty encountered by defendant from trouble with its paste-making machinery, it is not, and indeed could not well be, seriously claimed that such a cause would ordinarily come within the definition of a "circumstance beyond its control," which would excuse performance by defendant within the terms of the contract. Carnegie Steel Co. v. United States, 240 U. S. 156, 36 Sup. Ct. 342, 60 L. Ed. 576; Morgan v. Lyall, 16 Quebec K. B. 562; Connorsville Wagon Co. v. McFarlan Carriage Co., 166 Ind. 123, 76 N. E. 294, 3 L. R. A. (N. S.) 709; American Bridge Co. v. Glenmore Distilleries Co. (Ky.) 107 S. W. 279; Vredenburgh v. Baton Rouge Sugar Co., 52 La. Ann. 1666, 28 South. 122. But the claim under this head is, first, that the custom in the packing business is to recognize such causes of delay as justifying a "short pack"; and, second, that independently of this custom the parties themselves put that construction upon the contract, and that the court is bound thereby. But the evidence on the subject is too vague, unsatisfactory, and conflicting to enable the court to find the existence of any such custom. It tends strongly, to the contrary, to indicate that nothing is ordinarily regarded by the trade as justifying a "short pack," other than causes beyond the control of the packer, such as those stipulated in the contract or of a kindred character.

Nor do I think the evidence sustains the contention that the parties in their dealings have given the contract any such construction as that contended for. This claim is based solely upon certain passages occurring in the correspondence carried on during the time the goods were being processed. Quite early in the packing season the defendant wrote plaintiff of difficulties being encountered with the processing machinery, which were causing delay, and that by reason of that, and because "the crop this year is very short, as we have had considerable rain, which has caused much damage," it was predicted that the pack would be as low as 25 per cent. In answer the plaintiff wrote, expressing regret over the difficulties being encountered and disappointment at the prospect of a "short pack," and, expressing the hope that defendant would find conditions improving, said:

"At this time we will only state that, if you make every possible effort to produce these goods within your power as we doubt not you are doing, we will surely meet you in reasonable fashion in considering the unfortunate condition which has confronted you. It is obvious, naturally, of course, that in any case we shall expect a full pro rata delivery of all such goods as you are successful in producing."

There were later references in the correspondence to the same subject, but none bearing more definitely on the question of a practical construction of the contract than those given. It is quite obvious that there was nothing in the suggestions made by plaintiff, in reply to a recital by defendant of the difficulties encountered, which could be seized upon as tending to show that plaintiff was giving the contract a construction in any respect differing from that its language would import. The defendant had mentioned to plaintiff, as one of the difficulties presenting itself, a short crop resulting from weather conditions, a thing which plaintiff would at once recognize as justifying or excusing a "short pack" under the very terms of the contract. The answer must be read, as does his next letter, in which he makes reference to hearing that weather conditions had improved, as indicating that damage to the crop was what he had in mind in his suggestion about meeting defendant's situation "in reasonable fashion." Very clearly it cannot be construed as an acquiescence in any suggestion which may be gathered from defendant's letters that the latter was relying on the trouble with its machinery as justifying a "short pack."

[3] In construing acts or expressions of the kind relied on as constituting a construction by the parties of a written contract at variance with the ordinary import of its terms, it is a cardinal rule that—

"It ought to appear with reasonable certainty that they were acts of both parties, done with knowledge, and in view of a purpose at least consistent with that to which they are now sought to be applied." Sternbergh v. Brock, 225 Pa. 279, 287, 74 Atl. 166, 169 (24 L. R. A. [N. S.] 1078, 133 Am. St. Rep. 877).

Here the only information plaintiff had as to conditions confronting the defendant was what those conditions were represented to be by the latter, and as to which, as we have seen, the failure of the crop was at least exaggerated. In this respect, therefore, the plaintiff is entitled to rely on the terms of the contract as written.

The further considerations urged by counsel as to the construction to be put upon the contract have not been overlooked, but are regarded as inapplicable to its express terms. The contract price, delivered by defendant f. o. b. cars San Francisco, was $7 per case, and it is stipulated that the market price at the time and place of delivery was $10 a case. In view of the foregoing considerations, plaintiff should have judgment in accord with those figures, based upon a delivery of 80 per cent. of the quantity contracted for, less the quantity already delivered, and for its costs.

Judgment may be entered accordingly.