No. 23,609.

THE RANNEY-DAVIS MERCANTILE COMPANY, *Appellee*, v. THE SHA-
WANO CANNING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. CONTRACT—*To Furnish Retail Merchant Canned Beans and Beets—Short-
age of Crops—Interpretation of Contract.* The following provision of a
contract to furnish a quantity of canned beans and beets is, held to mean
by fair implication that the produce referred to is to be raised by the seller
directly or through growers under contract with him, and that in case of
a shortage of such crop from causes beyond his control he is not required
to buy other produce to fill the order:

"The seller agrees to plant sufficient acreage to cover all goods sold for
delivery during the coming season and to use every effort to insure full
delivery. If, however, on account of the shortage of crops, or other causes
beyond the control of the seller it is unable to deliver the full amount
herein named, it is agreed that the buyer will accept a *pro rata* delivery
with other purchasers, of all grades of goods covered by this contract, with-
out claim for damages."

2. SAME — *Shortage of Crops — Privilege of Prorata Delivery — Interpreta-
tion of Contract.* Where by the terms of a contract to furnish articles the
seller is entitled to make a *pro rata* delivery among its customers, one of
them has no ground of complaint because distribution is made in a different
proportion among others, except so far as he is thereby prejudiced.

3. SAME. Where in a contract for furnishing canned produce the buyer agrees
in the event of a shortage in the seller's crops to accept a *pro rata* delivery
with other purchasers the operation of this provision is not affected by the
fact that the seller is liable to some of his customers for a failure to make
a full delivery.

4. SAME. Where such a contract has been made, if the seller, after his crop
has been injured, agrees to make deliveries to new customers the fact is to
be taken into account in determining whether he contracted for a larger
delivery than reasonable expectations warranted.

5. SAME—*Goods Commandeered by the Government.* Where goods contracted
to be delivered to a buyer are commandeered by the government, per-
formance by the seller is to that extent excused.

6. SAME—*Proof of Market value.* A technical objection concerning the proof
of market value is held not to require a ruling.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed
April 8, 1922. Reversed.

C. L. Swartz, of Arkansas City, and *Edward J. Fleming*, of Tulsa, Okla.,
for the appellant.

W. L. Cunningham, and A. M. Dean, both of Arkansas City, for the ap-
pellee.

Mercantile Co. v. Canning Co.

The opinion of the court was delivered by

Mason, J.: The Shawano Canning Company, of Shawano, Wis., entered into a written contract to sell to the Ranney-Davis Mercantile Company, of Arkansas City, Kan., a quantity of canned beans and beets. It furnished approximately ten per cent of the beans and no beets. This action was brought against it because of its failure to deliver the remainder. The court directed a verdict for the plaintiff, submitting to the jury only the question of the amount of damages, which was fixed at that claimed in the petition. Judgment was rendered accordingly and the defendant appeals.

1. The parties disagree as to the meaning of the contract. The defendant's view is that the beans and beets were to be grown by it or under its supervision and that a shortage in what it raised would relieve it from any obligation except to furnish the plaintiff with a *pro rata* amount of that contracted to all its customers. The plaintiff insists that the defendant was bound to buy the produce upon the open market if necessary, and that a shortage of crop was not material unless it were general—so as to prevent such a purchase. The portion of the contract relating to this matter reads:

"The seller agrees to plant sufficient acreage to cover all goods sold for delivery during the coming season and to use every effort to insure full delivery. If, however, on account of the shortage of crops, or other causes beyond the control of the seller it is unable to deliver the full amount herein named, it is agreed that the buyer will accept a *pro rata* delivery with other purchasers, of all grades of goods covered by this contract, without claim for damages."

The language is not so explicit as might be desired, but we think the inference is fairly to be drawn that the produce furnished was to be grown by the defendant or growers under contract with it. Otherwise there would seem to be little purpose in the provisions relating to the planting. The clause "and to use every effort to insure full delivery" appears to us from the context to refer to the care to be given to the crops grown by the defendant or under its supervision and not to be a general pledge to the attempted performance of all the obligations assumed under the contract, which would seem to be superfluous. If we are right so far it follows that the shortage of crops referred to is a shortage in the crops of the defendant not due to any cause within its control. This interpretation appears to us to accord with the meaning which would

naturally be given the contract upon a first reading and also after a critical examination.

There is little help to be had from the authorities. No closely similar contract seems to have been passed upon. In a recent note on the destruction of specific property which is the subject of a contract as an excuse for nonperformance (12 A. L. R. 1273, 1288-1294) cases are collected some of which bear indirectly upon the question under consideration. In one the seller was held liable under a contract to furnish canned tomatoes, containing a clause releasing him if performance was prevented by a cause beyond his control; but it was said in the opinion: "There is no allusion in the contract to any particular source from which these tomatoes were to be taken except that they should be of the 1901 pack of appellant's cannery." (*Newell v. New Holstein Canning Co.*, 119 Wis. 635, 639.) In another an injury to his crops by frost was held not to affect the liability of the seller, who had agreed to grow and deliver them, but not on any particular land; he relied, however, only on the general rule as to the effect of the destruction or loss of the subject of a contract, no special agreement having been made concerning the matter. (*Anderson v. May,* 50 Minn. 280.) In another the contract provided for the sale of a quantity of onion sets, the seller to be released as to any that were destroyed by fire or other unavoidable cause. He claimed a partial release by reason of his crop being injured by frost and the court rejected his offer to prove by oral evidence that the contract related to specific onion sets to be grown by him. (*A. L. Jones & Co. v. Cochran et al.,* 33 Okla. 431.) In another, where a contract to furnish canned tomatoes, the source not being indicated, provided that the seller should not be liable in the event of "total failure or destruction of crop," the question of the extent of the territory over which the crop shortage must extend to constitute a defense was held to be one of fact on which oral evidence was to be admitted. (*Ryley-Wilson Grocer Co. v. Seymour Canning Co.,* 129 Mo. App. 325.) In another, where the contract provided for only a *pro rata* delivery "in case of short pack" it was held that the reference is to a crop shortage in the territory within a reasonable distance and not merely in the immediate vicinity. (*P. Pastene & Co. v. Greco Canning Co.,* 268 Fed. 168.) In others it was inferred that a contract for the delivery of produce was intended to apply to a specific crop from the fact that the seller was a grower and not a buyer, and at the

time the contract was made represented that his crop was in good condition—a rather extreme case (*Rice & Co. v. Weber*, 48 Ill. App. 573) ; and from the fact that a written contract for the delivery of 3,000 bushels of wheat contained the provision "if there should be 500 bushels over or under this is to be taken on the same basis." (*St. Joseph Hay & Feed Co. v. Brewster* [Mo. App.] 195 S. W. 71.)

Here the contract did not contemplate that the produce was to be grown on any particular land, but did contemplate, according to our interpretation, that it was to be grown by the defendant, that is, under its supervision. The defendant was not required (or indeed permitted) to go upon the market and buy beans and beets to fill the order, this situation resulting not from the general rule regarding impossibility of performance, but from the terms of this particular contract.

2. There was evidence that the defendant caused the planting of a sufficient acreage to insure enough crops under normal conditions to enable it to fill all its orders, but by reason of unfavorable weather no beets were produced, and only about eleven per cent enough beans for the purpose; and that substantially that percentage of the plaintiff's order was delivered. It appeared from the defendant's evidence, however, that in some instances a larger percentage had been delivered to other buyers whose contracts called for a higher price. The plaintiff contends that, in order for the defendant to take advantage of the provision of the contract in regard to prorating, it had the burden of proving that it had delivered to each customer the share to which it was entitled, and no more, and because it failed to do. so it was liable for the full amount claimed. This theory seems to be supported by the decision of the circuit court of appeals in *Acme Mfg. Co. v. Arminius Chemical Co.*, 264 Fed. 27, but the weight of the case as a mere matter of authority is considerably impaired by the fact that one of the three judges participating dissented and the ruling of the district court was reversed. Moreover, while the contract there involved explicitly excused the seller from delivery when prevented by causes beyond its control its right to prorate among its customers was not a matter of express contract and there was perhaps on that account the more reason for making equitable conduct on its part essential to the exercise of the privilege. In two other federal cases the rule seems to be recognized that where the seller has a right to prorate

his deliveries his failure to make a proportionate distribution can be complained of by a buyer only to the extent to which he is injured by it; that such failure does not entitle a plaintiff to the full amount of his claim, but only to a recovery to the extent to which he is thereby affected; that each buyer is concerned only with the disposition of the share of the goods to which he is entitled. (*Jessup & Moore Paper Co. v. Piper,* 133 Fed. 108; *Consolidation Coal Co. v. Peninsular Portland C. Co.,* 272 Fed. 625.) In the case last cited it was said: "Again, while failure to exercise good faith, prudence, diligence, and reasonable care should forfeit relief to defendant to the extent that such failure has prejudiced plaintiff, we think that right to relief should not thereby be entirely forfeited, but should be lost only to the extent to which plaintiff has been thereby prejudiced." (p. 632.) Under the contract here involved the plaintiff was only entitled to a delivery of a proportionate share of the crop raised by the defendant, assuming the shortage to be due to causes beyond its control. The defendant's liability is limited to damages for its failure to make a delivery of that amount. If the portion of the crop which the defendant was entitled to deliver to other customers was not fairly distributed among them that fact forms no basis for a recovery by the plaintiff.

3. Some of the defendant's contracts with other customers differed from that made with the plaintiff—in some instances imposing upon the defendant an absolute liability to furnish the goods ordered. We do not regard this circumstance as affecting the defendant's liability to the plaintiff. The settlement between these parties must be made according to the terms of their contract with each other. If the defendant planted enough crops to enable him under normal conditions to meet the demands of all his customers, the fact that his unavoidable failure to do so renders him liable in damages to some of them works no injury to the plaintiff and gives it no cause of complaint.

4. The plaintiff asserts that some of the contracts on which partial delivery was made were entered into after the crop had suffered injury. This is a matter to be taken into account in determining whether the defendant contracted for a larger delivery than reasonable expectations warranted.

5. It appears that a part of the defendant's crop was commandeered by the federal government under the National Defense Act. Any portion of it disposed of in that manner is to be treated so

far as concerns the settlement between the parties hereto as though it had been destroyed without fault on the part of the defendant. (Note, 15 A. L. R. 1512.)

6. The defendant asserts that the plaintiff did not prove the market value of the undelivered goods. There seems to be no dispute about the rule—merely as to whether it was followed with sufficient strictness. Any technical defect in that regard can be remedied on a new trial.

The judgment is reversed and the cause is remanded with directions to grant the defendant's motion for a new trial.