WILSON & CO. *v.* CARPP.

SALES—CONTRACTS—CONSTRUCTION.

In an action by the buyer for the breach of a contract for the sale of certain quantities of canned berries, where the plaintiff knew that defendant canner did not grow the berries, the words "seller's crop," as used in a clause of the contract providing for "*pro rata* delivery in case of partial or total failure of the seller's crop," *held,*

properly construed by the court below to mean "farmers' crop" in the territory tributary to defendant's cannery.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted January 2, 1923.     (Docket No. 14.)     Decided June 4, 1923.

Assumpsit by Wilson & Company against S. M. Carpp for breach of a contract for the sale of certain berries.     Judgment for defendant.     Plaintiff brings error.     Affirmed.

*Glenn E. Warner,* for appellant.

*Thomas J. Cavanaugh* (*W. P. Harvey,* of counsel), for appellee.

MOORE, J.     The defendant, Carpp, was engaged in the canning business at Hartford, Michigan.     He was a farmer, and did not grow or raise berries of any description.     In the spring of 1919, through brokers of the city of Chicago, he entered into two contracts with plaintiff for the sale of black raspberries, one dated April 2d, for the sale of 750 cases, the other dated April 3d, for the sale of 100 cases, making a total of 850 cases of black raspberries.     On the 5th day of April, through the same brokers, he entered into a contract with plaintiff for the sale of 400 cases of strawberries in syrup, and on April 10th another contract for the sale of 500 cases of strawberries in syrup, making a total of 900 cases of strawberries. May 27th the plaintiff notified the defendant that it wanted the 400 cases of strawberries packed in 65 degree syrup.     It also at the same time notified the defendant that it wished 500 cases of strawberries packed in 30 degree syrup.

It also notified the defendant that it wished the black raspberries packed in 30 degree syrup.     Only a portion of the berries were delivered, and this suit

was brought to recover damages. The defendant gave notice under the general issue that he would show in his defense that there was a substantial failure of the crop in his territory in 1919, and that he made a *pro rata* delivery to the plaintiff. The case was submitted to the jury and the jury found for the defendant. The case comes to this court upon writ of error.

The assignments of error which are relied upon for reversal are:

(1) Errors in admission of testimony.
(2) Errors committed in the charge of the court.
(3) Errors committed in refusing plaintiff's requests to charge.

A consideration of these assignments makes it necessary to refer to the material provisions of the contract. We quote:

"Acting as brokers for S. M. Carpp Canning Company, Hartford, Michigan, we have this day sold to Wilson & Company, Chicago, Illinois,

"One hundred (100) Cs. 24/2 Black Raspberries in Syrup—

"10° Balling . . . . . . . . . . . .$2.55 per dz.
"20°      "      . . . . . . . . . . . . 2.65   "     "
"30°      "      . . . . . . . . . . . . 2.80   "     "

"Buyer to furnish definite assortment on above prior to June 1st, 1919.

"The above goods are f. o. b. Michigan factory. Car-load rate of freight guaranteed.

"Goods to be shipped as soon as possible after packing season in pool car.

"*Pro rata* delivery in case of partial or total failure of seller's crop."  *    *    *

The deciding question in the case is the construction to be given to that part of the contract reading "*Pro rata* delivery in case of partial or total failure of seller's crop." We quote from the brief of appellant:

223—Mich.—6.

"Plaintiff claims that it was the duty of the defendant to deliver the goods ordered, or if that were impossible, to so notify the plaintiff and give it at least a chance to make a second choice."

It is said to be a sufficient answer to this contention that the contract does not so provide.

We again quote:

"Defendant's counselors having apparently realized their failure to make a defense under the correct construction of the *pro rata* clause, their failure to prove the number of cases of strawberries and black raspberries canned by the defendant in 1919 and the number he had contracted to deliver to wholesalers, attempted to place on the contracts the absurd construction that: 'seller's' crop meant 'farmers' ' crop, and proceeded, from the testimony of the defendant and numerous other witnesses, to prove the partial failure of the 'farmers' ' crop in 1919.  *  *  *

"The issue which should have been submitted to the jury was narrow and well defined.  That issue involved only the answer to two questions:

"How many cases of black raspberries and strawberries did the defendant can in 1919?

"Did he deliver to plaintiff its *pro rata* share?

"The court did not confine the proofs to the true issue, but permitted the defendant to confuse the issue by the grossly prejudicial testimony to which we have called attention.  When the case was submitted, the vision of the jury was blinded by the hot sands of Bainbridge, blurred by the seeds from the dried berries of Berrien and distorted by the killing winds from Hartford."

Counsel for the defendant insist, we quote from the brief:

"That if plaintiff's contention is sustained then that clause in the contract amounts to nothing because the seller in this case is not a farmer.  He did not raise a crop.  The buyer knew that he was not engaged in raising fruit, and therefore had no crop, save only as he secured it from the fruit growers.  Both parties must have had something in mind when they used that

term 'seller's crop.' It was the crop which would be under the defendant's control during that season as the contract referred to the 1919 pack. How would the defendant put that crop under his control? The answer must be by buying it, and as we look at the testimony in the record we find that the defendant became the owner of a certain crop in that community by entering into contracts with the fruit growers. It then became his crop just as much as though he had raised it. We therefore insist that the contract in the regard aforesaid was properly construed by the court below. * * *

"What we did say and what we now say is that the seller's crop depended upon the farmers' crop, and that the only way we could convincingly show that the seller's crop failed was to show that the defendant diligently secured contracts from the farmers for the purchase of strawberries and raspberries to the extent that he had contracted to sell, and then to show by the farmers, just what was shown in this case, that the crop was substantially a failure. If the farmers' crop failed, then the seller's crop must necessarily fail."

The evidence was very clear that the crop tributary to the defendant's cannery was very short. One of the witnesses testifying said:

"We started to pick the strawberries. We picked 15 crates and delivered them to Mr. Carpp. We didn't pick more; they were already cooked. Hot sun and dry wind and one thing and another like that. The berries burned up because of the hot sun and dry wind. We had to have pliers to get them off the bushes. The berries all dried up. They were awfully small."

There was much other testimony of a like character.

The judge charged the jury at great length. He said in part:

"But the defendant comes into court and denies liability under these contracts by reason of the very terms and force of the contract which he says, given

a fair interpretation under certain facts that he has presented here, relieve him.     In other words under the contracts which I have referred to there was this clause: 'In the event'—I am not giving the verbiage exactly, only the substance which is sufficient—'in the event of a failure or partial failure—partial failure or total failure of the seller's crop' then the defendant would be absolved from the contract and only required to make *pro rata* distribution.     I need not go into detail.     It is plain to you.     You will understand what a *pro rata* distribution would be.     That is all that would be required under this contract, if certain things were proven so that you could put into force that condition of the contract, then all that was necessary or required of the defendant would be to furnish to the plaintiff a *pro rata* amount of goods. A given total sold in the open market is claimed here to different persons by the defendant; he claims that there was a failure, a partial failure of the berry crop of that year and he contends that under the contract the shipments that he has made to the plaintiff, when considered with the orders or his liability under the contracts to others, absolves him from the fact that he has turned over to the plaintiff for his fair *pro rata* share of the output of the factory.     *     *     *

"Now when defendant seeks to avoid this contract the burden shifts.     Now, so far as showing that there was a partial failure or total failure of crop, the burden then shifts to the defendant to satisfy you by a preponderance of the evidence that that was the fact here and that he was entitled to invoke that clause in the contract of a *pro rata* distribution.     I think I have made that clear to you.

"Now our first inquiry will then be, as I imagine you will not have much difficulty in determining, that the contracts were made and executed as stated and which you have in your possession by consent of attorneys.     The crux of the question will be first, Was there a partial or total failure of crop?     That there was not a total failure is manifest by the evidence here; is manifest by the fact that there was a partial delivery.     What do the facts show in that respect? You will analyze all of the testimony and determine under that contract, or the several contracts, to what

extent was there a partial or total failure of the crop? * * *

"Your inquiry will be directed first, ladies and gentlemen—of course as I have indicated these contracts, but you will have no trouble in that; there is no dispute on either side—your main inquiry is to determine first whether there was a partial or total failure of crop in 1919.    If there was then it is your duty to analyze and determine from the evidence as near as is possible what was the output of that factory as shown; was it fairly and in good faith canned along the line of the quality of the crop?    And was this plaintiff treated under his contract and did he receive what that contract under its fair provisions entitled him to?    The defendant contends that he did; that he acted in perfect faith and that in no manner according to the records that he has yet on hand, and from his own oral statements on the stand, he stoutly claims that in every way he has lived up to the fair construction of the contract."

We think the judge properly construed the contract, and that the verdict of the jury was fully justified by the competent evidence in the case.

Judgment is affirmed, with costs to the appellee.

Wiest, C. J., and Fellows, McDonald, Clark, Bird, Sharpe, and Steere, JJ., concurred.