## Sunseri et al. *v.* Garcia & Maggini Co., Appellant, et al.

250

Argued October 10, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Carl E. Glock,* with him *John S. Cort* and *Reed, Smith, Shaw & McClay,* for appellant.——The charge of the court to the jury nullifies the clause in the contract which excuses the seller from responsibility for full delivery in case of crop failure.

Under the circumstances, the court should have applied the equitable doctrine of substantial performance:

Pressy v. McCornack, 235 Pa. 443; Preston v. Finney, 2 W. & S. 53.

The seller is excused from full performance under the principles of impossibility of performance: Howell v. Coupland, 2 Q. B. D. 258.

*J. Garfield Houston,* for appellees.—Lacking a provision in this contract expressly giving the right to prorate, we maintain that the liability clause printed in the contract means that the seller is not responsible for nondelivery in whole or in part if prevented from making delivery because of crop failure.

Crop failure is material in connection with the question of custom. The defendant alleged a custom to prorate on contracts for future deliveries containing a liability clause similar to the one in the present contract, where there was a partial crop failure. It was left to the jury to decide whether there was such a custom; and if they found such a custom to exist, it was put to them to decide the percentage of crop failure.

OPINION BY MR. JUSTICE SCHAFFER, November 25, 1929:

Under a written contract plaintiffs, Pennsylvania Macaroni Company, purchased from defendant, Garcia & Maggini Company, five carloads, three hundred sacks each, of "Bon ton white graded garlic San Juan District." The contract is dated April 7, 1924, and contemplated delivery the following fall, when the crop growing in California had matured. Defendant delivered under the contract but half a carload, which plaintiffs refused to accept, alleging that it was not of the quality stipulated for, and this action was brought to recover damages for the failure to deliver as the agreement required. Recovery was had by plaintiffs in the court below and defendant appeals.

The controversy arises over a paragraph of the contract which reads: "Liability. Seller is not responsible

for delay or non-delivery or non-shipment or default in shipment in whole or in part, if prevented or interfered with by exercise of governmental authority, or by 'force majeure,' strikes, war, riots, revolutions; or for delay in transportation, due to demands or embargoes of United States government or any other government; or non-delivery or delays through fires, floods, droughts, accidents, insurrections, lockouts, breakdown of machinery, commandeering of vessel carrying goods, or detention of or delay to vessel (steam or sail) resulting directly or indirectly from acts of God, perils of the sea, stoppage of labor, shortage of cars, or crop damage, or crop failure, or by any other unavoidable cause other than seller's own negligence."

The particular feature to be considered is that of "crop failure," appellant's defense being that it was unable to comply with its undertaking due to a ninety per cent failure of the crop of garlic in the San Juan District, which in area does not exceed 8,000 acres, caused by drought. Appellant insists that it met the requirements of its written undertaking by shipping ten per cent of what it had agreed to and urges that it was error in the trial judge not to so hold. That there was a partial crop failure is not disputed. Just how much below normal it was is not established with certainty. Defendant's own witnesses differed as to this, some fixing the product as but one-tenth of the normal crop, others as high as one-third. Appellant based its tender of one-half a carload on an alleged oral agreement with the buyer to accept 10% as full delivery, on a trade custom which, it claimed, covered pro rata deliveries in the event of crop shortage, and on the quoted clause of the contract. The first two propositions are now out of the case; they were controverted matters on the trial and were submitted to the jury, who by their verdict in plaintiff's favor found there was no oral agreement or custom.

The main question in the case, indeed the only other in view of the jury's findings regarding the extraneous

points to which we have just adverted, is what is the meaning of the words "crop failure" in the contract? Of course, if the collocation of language justified it they might include partial failure, but their normal meaning, in business contracts, is total failure, this being, at common law, the only kind of failure which excuses performance. It is clear, also, from a reading of the paragraph under consideration, that it was prepared by or for defendants. Hence they have the burden of proof of pointing to language which sustains their contention, which is variant from the normal meaning, and doubts are to be resolved against them: Wilson v. Franklin, 282 Pa. 189; Coates v. Cotteral, 290 Pa. 237; 13 C. J. page 544, section 516; 6 R. C. L. page 854, section 242. They have wholly failed in carrying this burden. Moreover, we are not limited to applying the foregoing rules of construction, for, taking the contract in its entirety, we are convinced the words can only mean total failure.

In the early part of the provision we have quoted, when referring to "delay, or nondelivery, or nonshipment, or default in shipment......if prevented or interfered with by exercise of governmental authority," etc., where it was intended to protect the seller against partial as well as total liability from the causes stated, the contract expressly provided there against by using the words "in whole or in part"; but in the clause where "crop failure" appears no such language is used. On the contrary, if we take its language alone a partial failure would seem to be excluded. It states that the "seller is not responsible for......nondelivery or delays through fires, floods......stoppage of labor, shortage of cars, or crop damage or crop failure, or by any other unavoidable cause other than the seller's own negligence." An excuse to be available must, therefore, connote an "unavoidable cause," and here there was none, for sufficient garlic could have been bought by defendants, if they had been willing to pay the market price for it. So, also, if the intention had been to cover a partial failure

from an unavoidable cause, the words used would naturally have been "crop shortage," as in the case of "shortage of cars," the change in language indicating a change in meaning. If the intention had been to allow a pro rating in case of a partial failure, it would have been easy to say so, but it was not said. Apt language to that effect appeared in the contracts construed in Wilson v. Carpp, 223 Mich. 79, 193 N. W. 776, and Ranney-Davis Mercantile Co. v. Shawano Canning Co., 111 Kan. 68, 206 Pac. 337, relied on by appellants. No such language appears here, and hence the general rule of law and the principles of construction above referred to apply, and defendants, having contracted to deliver a specific quantity of garlic, can only excuse their failure so to do by proof of impossibility of performance, of which there is no evidence in this record. On the contrary, there was testimony that San Juan garlic was being offered in the fall of 1924 at high prices and plaintiffs actually bought some, furthermore it is admitted by appellant that additional garlic could have been obtained, at a price higher than that named in the contract and that it made no endeavor to purchase any to meet its undertaking. Moreover, appellant expected that there would be a shortage in the crop. On April 8th, the day following the execution of the agreement, it wrote to plaintiffs, "It looks as though we are going to have a very short crop and if such is the case, you will undoubtedly be selling some of this garlic that we have just confirmed to you at around 8 and 9 cents......and it will give us a great deal of pleasure for this to be the case, as nothing pleases this company more than to have all our customers enjoy handsome profits on their purchases."

If it be contended that the words "in whole or in part" apply also to the clause relating to "crop failure," appellant would be no better off. In that event, applying the principles of construction to which reference has been made, the clause would mean that if, because of a "crop failure" "in whole or in part," it is impossible for

the seller to comply with his contract, it will be excused from performance to the extent of that impossibility. This has nothing to do with pro rating, for which the contract nowhere provides, and hence as appellant gave no proof of impossibility in obtaining the garlic, the liability remains notwithstanding that provision of the contract.

Appellant was a dealer,—not a grower. This plays a part in the solution of the legal question. It had contracted to deliver five carloads of the garlic at the price of 4¾ cents per pound. It could discharge the obligation of the contract only by making the delivery as stipulated. The fact that more might have to be paid for the commodity than was contemplated when the engagement was entered into in no way absolves it from the undertaking. We are not dealing with a case where there was a total crop failure or with one in which a *grower* had agreed to make future delivery from a specified tract or field and there had been a partial crop failure. Under the contract as it is written, not specifying that there shall be a pro rata diminution in deliveries proportionate to crop failure, shortage of supply was available to defendant only in the event that it was able to show not merely the extent of the failure, but also that it could not procure the commodity at any price for delivery to its vendee. "An agreement to sell the crop of a specified piece of land is excused if there is no crop. But an agreement to sell a specified quantity of produce is not excused by the fact that the seller expected to fulfill the contract with the crop of particular land, and that crop, without fault on his part, is a failure": Williston on Contracts, volume 3, page 3310. See also Ibid. 3311 and the same author on Sales (2d ed.), volume 2, section 661, page 1653; 23 R. C. L. page 1430; Newell v. New Holstein Canning Co., 119 Wis. 635, 97 N. W. 487; Jones v. Cochran, 33 Okla. 431, 126 Pac. 716; Anderson v. May & Co., 50 Minn. 280, 52 N. W. 530; Howell v. Coupland, L. R. 1 Q. B. D. 258, 33

L. T. R. 832; Ontario Fruit Growers' Assn. v. Cutting Fruit-Packing Co., 134 Cal. 21, 66 Pac. 28; Pearson v. McKinney, 160 Cal. 649, 117 Pac. 919. "The fact that performance proved to be more expensive than was anticipated does not constitute impossibility of performance so as to avoid the contract": Page on Contracts, volume 5, section 2706; 13 C. J. 637, and cases cited.

The court did not err in refusing to permit defendant to prove its contracts with garlic growers. This had no bearing on defendant's obligation to plaintiffs. If it had been able to make no contracts at all with growers, its responsibilities would have been the same. It was a dealer and was not confined to buying from growers; it could have purchased from other dealers, or if it made improvident contracts with growers, this could not affect its liability to those with whom it had contracted to deliver.

The record discloses that the case was fairly and ably tried by the learned judge of the court below and we find nothing in it calling for a reversal.

The judgment is affirmed.