[No. 16524.    Department One.    January 20, 1922.]

LEAVENWORTH STATE BANK *et al., Respondents,* v. CASHMERE APPLE COMPANY *et al., Appellants.*[1]

SALES (3)—DISTINGUISHED FROM CONTRACT FOR MANUFACTURE. A written contract calling for the sale and delivery of a certain number of apple boxes "now manufactured" and an additional number "to be manufactured" is a contract of manufacture and sale.

EVIDENCE (174, 179)—TO VARY WRITING—CONSTRUCTION OF CONTRACT—INTENT—EXTRINSIC EVIDENCE. Under a contract for the sale and manufacture of apple boxes, with a provision making it "subject to fires," oral evidence is admissible, in an action to recover damages for the nondelivery of the boxes "to be manufactured," to show that the buyer knew when he entered into the contract that the seller had but one plant, which was subsequently destroyed by fire before full delivery could be made.

SALES (72)—PERFORMANCE OF CONTRACT—QUANTITY DELIVERED—EFFECT OF DEFICIENCY. Under a contract for the sale of 75,000 boxes "now manufactured and in stock" at the seller's mill, the seller would be liable for any shortage in the number, although the pile of boxes had been inspected by the buyer, where the latter did not rely upon such examination but was assured by the mill company

[1]Reported in 204 Pac. 5.

that the pile contained sufficient to supply the order, it being incumbent on the seller and not the buyer to know whether there was sufficient in stock.

SAME (37, 77)—CONSTRUCTION OF CONTRACT—CONDITIONS—EXCUSES FOR FAILURE TO DELIVER—LOSS OF PLANT BY FIRE. Where there was a shortage in the number of manufactured apple boxes at the seller's mill which a written contract of sale required to be delivered to the buyer, a subsequent oral agreement between the parties that the difference should be made up by manufacture at the seller's mill constituted an independent contract, and the seller could not take advantage of a clause in the written contract excusing performance in case of fire.

Cross-appeals from a judgment of the superior court for Chelan county, Grimshaw, J., entered February 3, 1921, upon findings in favor of the plaintiffs, in an action for damages for breach of contract, tried to the court. Affirmed.

*Hughes & Wallace*, for appellants.

*Herman Howe* and *Corbin & Easton*, for respondents.

BRIDGES, J.—This action grows out of a written contract entered into on the 22nd day of April, 1919, between the respondent Peshastin Mill Company, as the seller, and the appellant Cashmere Apple Company, as the purchaser. It provided that the:

"Buyer agrees to buy and seller agrees to sell . . . box shooks containing no defects . . . and manufactured in a uniform manner, according to the following specifications and amounts:

"75,000 apple boxes now manufactured and in stock at Leavenworth, Washington, being part of the boxes inspected by the buyer, consisting of . . . [certain sizes described].

"125,000 apple boxes to be manufactured . . . [in certain sizes and dimensions].

"The total pear boxes required by the buyer, manufactured . . . [according to certain sizes mentioned].

"The total cherry lug boxes required by the buyer, manufactured according to standard specifications of the seller . . . [and to be of certain specifications].

"The total cot crates required by the buyer, to be manufactured according to certain standard specifications of the seller . . .

"The total peach boxes required by the buyer, to be manufactured . . . [according to certain sizes].

"The 75,000 apple boxes now manufactured and in stock at Leavenworth, Washington, will be shipped at once. The 125,000 apple boxes to be manufactured will be delivered as rapidly as possible . . .

"It is agreed between the buyer and the seller that this contract is subject to fires, strikes, lockouts, delays in transportation, car shortage, and other contingencies beyond the control of the parties hereto."

The contract fixed the prices and provided for delivery of the boxes between April and November, 1919.

Of the 75,000 apple boxes described as "now manufactured and in stock at Leavenworth," only 55,425 were ever delivered; and of the 125,000 apple boxes "to be manufactured" only 25,600 were ever delivered. A part of these deliveries were paid for by the apple company, but it refused to pay for the remainder because it claimed to be greatly damaged by reason of the failure of the Peshastin Mill Company to deliver the remainder of the apple boxes.

A few words at this time concerning the parties to the action are necessary for an understanding of the facts. The Peshastin Mill Company assigned its claim for the balance claimed to be due it for boxes shipped to the Leavenworth State Bank, which was the original plaintiff, and the Cashmere Apple Company, a corporation, was the original defendant. The respondents Mills and Loudenback, copartners, intervened because, after the making of the apple contract, they had become the owners of all of the rights of the Cashmere Apple

Company, and assumed all of its liabilities. They denied any liability to the bank. The interveners and the original defendant, Cashmere Apple Company, by cross-complaint brought into the action the Peshastin Mill Company and Leavenworth Box Company against whom they sought to recover for the failure of the Peshastin Mill Company to deliver apple boxes, as provided in the contract, and they also sought to offset such recovery against any amount which might be found to be due the bank on its assigned claim.

The case was tried to the court without a jury and judgment was entered in favor of the plaintiff bank for the amount sued for, less $1,761.75 damages awarded by the court to the defendants on their cross-complaint, and on account of the failure to deliver the balance of the 75,000 lot of boxes, and the court's judgment refused to give the cross-complainants any damages on account of the 125,000 lot of apple boxes. The defendants have appealed from that part of the judgment denying them any damages on account of the 125,000 lot of boxes, and the plaintiff has cross-appealed from that portion of the judgment which awarded the cross-complainants $1,761.75 damages on account of the 75,000 lot of boxes.

In order to simplify the facts, it may be said that the appeal of the defendants involves only that portion of the contract with reference to the 125,000 lot of box shooks, and the cross-appeal involves only that portion of the contract with reference to the 75,000 apple boxes in stock at Leavenworth. None of the other boxes mentioned in the contract are involved here.

In discussing the original appeal, we will refer to the apple company and Mills and Loudenback as appellants, and all the other parties as respondents; and in discussing the cross-appeal we will refer to the bank,

the Peshastin Mill Company and the Leavenworth Box Company as cross-appellants, and all other parties as appellants.

The respondents have at all times admitted that they failed and refused to deliver all of the 125,000 lot of apple boxes, and, as excuse therefor, alleged and undertook to prove that, under the terms of the contract, all of those boxes were to be manufactured by the Peshastin Mill Company at its lumber and box factory located at Blewett, Washington, and that, after it had delivered a portion of such boxes, and on, to wit, the 13th day of August, 1919, its entire mill was destroyed by fire, thus making it impossible for it to comply with its contract; and that, under that provision of the contract which provided that it was subject to fire, strikes, etc., it was relieved of further duty to furnish such boxes. On the other hand, the appellants contend that the contract was merely one of bargain and sale and not one of manufacture and sale, and that the destruction of the mill by fire did not relieve the respondents from complying with the contract. Which contention shall be upheld depends upon what construction shall be given the contract.

The respondents alleged and proved to the satisfaction of the trial court, and to our satisfaction, that, when the contract was made, the Peshastin Mill Company owned and operated but one mill for the manufacture of apple box shooks, and that such mill was the one which was subsequently destroyed by fire, and that the appellants had knowledge of these facts when they entered into the contract. The appellants contend it was error for the court to receive and consider such character of testimony, for the reason that it tended to add to or vary the terms of the written contract, which in itself was complete and definite. We have no doubt,

however, that the court properly received and con- .
sidered this evidence.

The proper rule is laid down in 6 R. C. L. 849, as
follows:

"Courts, in the construction of contracts, look to
the language employed, the subject-matter and the
surrounding circumstances. They are never shut
out from the same light which the parties enjoyed
when the contract was executed, and accordingly they
are entitled to place themselves in the same situation
as the parties who made the contract, so as to view the
circumstances as they viewed them, and so as to judge
of the meaning of the words and of the correct applica-
tion of the language to the things described."

If the respondents had undertaken to prove that
there was an oral agreement between the parties that
the boxes in question were to be manufactured by the
Peshastin Mill Company, at its Blewett mill, then the
argument of the appellants would be applicable, and
might, under some circumstances, be sustained on the
ground that such testimony tended to change the writ-
ten contract; but the testimony involved here was not
of that character. It was nothing more nor less than
putting the court in possession of such surrounding
facts and circumstances as were possessed by the
parties at the time they made the contract, and such
class of testimony is always admissible as an aid to a
construction of the contract.

The real question, then, is, does the contract mean
that the 125,000 lot of apple boxes were to be manu-
factured by the Peshastin Mill Company at its Blewett
mill? The contract itself says that these boxes are to
be "manufactured in a uniform manner," according to
certain specifications, and that the 75,000 lot of boxes
are "now manufactured," and that the 125,000 lot of
boxes are "to be manufactured" according to certain

specifications, and that the pear boxes and cherry boxes and cot crates and peach boxes are ''to be manufactured'' according to certain designated specifications, and that the 125,000 lot of apple boxes ''to be manufactured will be delivered as rapidly as possible.'' When these provisions are read in the light of the information which all of the parties had, it seems clear to us that the contract means that the 125,000 lot of boxes were to be manufactured by the Peshastin Mill Company at its Blewett mill. In other words, it was a contract for manufacture and sale and not one of bargain and sale. It would be an unnatural and strained construction to hold that the words ''manufactured'' and ''to be manufactured,'' so often used in the contract, meant that the boxes were to be made by any person or company. To so hold would be to deprive the provisions with reference to fire and strikes of all or nearly all their use or benefit, for it is manifest that all the numerous existing plants engaged in the business of manufacturing apple boxes, would not likely be destroyed within the seven or eight months within which these boxes were to be delivered.

The appellants cite a large number of cases, but seem most particularly to rely on *Thomson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578; *Newell v. New Holstein Canning Co.,* 119 Wis. 635, 97 N. W. 487; and *Anderson v. May,* 50 Minn. 280, 52 N. W. 530, 17 L. R. A. 555. We find nothing in these cases, or others cited by the appellants, contrary to the view we have expressed.

In the *Thomson* case, *supra,* the appellants were residents of Vancouver, B. C., and entered into an agreement with the respondents to sell them certain standard Calcutta grain sacks, to be delivered at Seattle or Tacoma. One clause of the contract was that ''all agree-

ments contained herein are contingent on strikes, accidents and other delays, unavoidable or beyond our control.'' The respondents sued the appellants for damages because of failure to deliver the sacks, and the defense was that within the time the sacks were to be delivered, the governments of Canada and Great Britain prohibited the exportation from Canada of any grain sacks such as those described in the contract, and that because thereof, the appellants were unable to comply with their contract. There was nothing at all in that contract which tended to show that the sacks were to be shipped from Canada, or any other British province, and the court very properly held that the action of the Canadian and British governments prohibiting the shipment of such sacks was no defense.

In the *Newell* case, *supra,* the facts were that Newell was a merchant, and entered into a contract with the canning company whereby he was to purchase, and the company was to sell and deliver to him, a certain quantity of ripe tomatoes, to be canned at the cannery of the appellant. The tomatoes were not delivered. Suit for damages resulted. The defense was that, about the time the tomatoes grown by the appellant were to be gathered, an unusual frost destroyed them. The court held that there was nothing in the contract to indicate that the tomatoes purchased were to be grown by any particular person, or on any particular land, and that it was the duty of the appellant to obtain the tomatoes anywhere it could for the purpose of complying with the contract. The court very properly held that such a defense would add an entirely new term or condition to the contract. It seems to us plain that that case is not at all in point. We do not think it necessary to detail the facts of any of the other cases cited. They all involve facts materially different from those in this case.

We hold that, under the terms of the contract here, it was not the duty of the Peshastin Mill Company, after the destruction of its plant, to go into the open market and purchase boxes, or have them manufactured by other concerns, for the purpose of complying with its contract, and that the destruction of its mill by fire relieved it of obligation to deliver any of the 125,000 lot of box shooks subsequent to the fire.

It is now necessary to consider the cross-appeal.

It will be remembered that it concerns only that item of the contract with reference to the 75,000 boxes "now manufactured and in stock at Leavenworth." The testimony seems to show that there were not 75,000 boxes in the pile located at Leavenworth, and that on that account the cross-appellant did not deliver the complete number provided for by the contract, to wit, 75,000. They contend that, before the contract was entered into all the parties to it examined this pile of box shooks and each supposed that there were at least sufficient there to supply the demand of the contract. Cross-appellant cites many cases to the effect that, where both parties to a contract assume the existence of a certain thing, and contract with reference to that assumption, if the thing assumed to exist does not in fact exist, then the contract is void. The testimony here, however, as found by the trial court, and we think the finding was correct, does not make the doctrine contended for by the cross-appellant applicable to this case. While it is true that both parties to the contract saw and examined the pile supposed to contain 75,000 boxes, yet the examination made by cross-respondents was not, and could not have been such as that they could determine that there would not be a shortage. On the other hand, the pile of boxes belonged to the Peshastin Mill Company, and it was its business to know whether there

were as many shooks in the pile as it agreed to sell therefrom. Besides this, the testimony shows that the purchasers did not rely upon their investigation, but were assured by the mill company that there were amply sufficient boxes in the pile to furnish the amount provided for in the contract.

But cross-appellant further contends that, after the parties learned of the shortage, there was an oral agreement between them that the difference should be made up by the mill company manufacturing them at its plant at Blewett, and it is contended that such oral contract was but a modification of the written contract in that regard, and that the fire clause in the written contract is applicable and would relieve the Peshastin Mill Company. We cannot accept this view. In the first place, we do not think the evidence shows that any new contract or arrangement was made; and if it should be conceded that it was made, it would be entirely independent of the written contract, and the mill company would be bound to comply with the oral contract, and the destruction of the mill would not relieve it. A very thorough consideration of this case convinces us that the judgment of the trial court was right, and we affirm it.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.