[No. 29958.   Department Two.   August 26, 1946.]

CLAUDE G. HOOVER, *Appellant*, v. C. PAUL SANDIFUR *et al.,*
*Respondents.*[1]

*Keith & Winston* and *Stimson & Donahue,* for appellant.

*Paul F. Schiffner* and *Randall & Danskin (Arthur A.*
*Lundin,* of counsel), for respondents.

BLAKE, J.—Plaintiff brought this action to compel specific
performance of an option clause contained in a contract
entered into between him and the defendant C. Paul
Sandifur on November 19, 1942. The court sustained a de-
murrer to the complaint; whereupon plaintiff filed an
amended complaint, a demurrer to which the court also
sustained. The plaintiff refused to plead further, and the
court entered judgment dismissing the action. Plaintiff
appeals.

So far as concerns the question to be determined on this
appeal, the essential facts set up in the amended complaint
may be summarized as follows:

Prior to November 19, 1942, plaintiff owned and operated
a taxicab business in Spokane, known as "Radio Cab Com-
pany." Defendants owned and operated a similar business,
known as "Spokane Cab Company." On that date, plaintiff
and defendant Sandifur entered into a contract whereby
plaintiff sold the Radio Cab Company business and equip-

[1] Reported in 171 P. (2d) 1009.

ment to defendant Sandifur for fourteen thousand five hundred dollars. The contract provided that the

"First Party [plaintiff] shall have an option to repurchase said Radio Cab Company . . . said purchase price to be the sum of Seven Thousand Five Hundred Dollars ($7500.00) for good will, taxicab stands and rights other than mobile equipment . . . Said option shall be effective for six months after the *duration* and/or six months after the discharge of said First Party from the Armed Forces of the United States, in the event that the First Party shall be in said Armed Forces, but in no event shall said option be effective for more than three years after the duration of the war. If the First Party should be discharged from said Armed Forces prior to the end of the war, *it is understood and agreed that the aforesaid option shall not be in effect during the duration,* except by written agreement of the parties." (Italics ours.)

As to what the parties meant by the term "duration," it is alleged in the amended complaint:

"That at the time of entering into such agreement on or about November 19, 1942, it was the intention and the purpose of the plaintiff and defendants to provide that such option for repurchase should be effective upon the cessation of actual hostilities of the war by the last enemy of the United States, after which event it might be expected that the plaintiff would be discharged from the military service and return to his civilian business and employment, unless plaintiff's discharge occurred after such cessation of hostilities, in which case such option for repurchase should be effective upon such discharge; that in the second paragraph of Section (6) of such agreement regarding the time when such option would be effective, the terms 'during the duration' and 'prior to the end of the war' were at all times used in the sense and intended by the parties to mean and designate the period of actual hostilities with the enemy, and the terms 'after the duration' and 'after the duration of the war' were at all times used in the sense and intended by the parties to mean and designate the period after the cessation of actual hostilities by the surrender of the last remaining enemy of the war."

In sustaining the demurrer to the amended complaint, the court followed a line of decisions holding that the termination of a state of war is a political, rather than

a judicial, question and may be brought about only by legislative resolution or executive proclamation. *United States v. Anderson*, 76 U. S. (9 Wall.) 56, 19 L. Ed. 615; *The Protector*, 79 U. S. (12 Wall.) 700, 20 L. Ed. 463; *Palmer v. Pokorny*, 217 Mich. 284, 186 N. W. 505; *State ex rel. Belden v. Burgess*, 23 La. Ann. 225; *Perkins v. Rogers*, 35 Ind. 124, 9 Am. Rep. 639.

There is, however, another line of decisions holding that such terms as "duration" and "end of war" mean, as commonly understood, the cessation of actual hostilities. *Nelson v. Manning*, 53 Ala. 549; *Kaiser v. Hopkins*, 6 Cal. (2d) 537, 51 P. (2d) 431; *Zinno v. Marsh*, 36 N. Y. S. (2d) 866; *Scott v. Commissioner of Civil Service*, 272 Mass. 237, 172 N. E. 218; *United States v. Hicks*, 256 Fed. 707; *Re Cooper's Estate*, All England Law Reports (Ann.), 1946, vol. 1, part 1, p. 28; *LeFevre v. Healy*, 92 N. H. 162, 26 A. (2d) 681; *State ex rel. Peter v. Listman*, 157 Wash. 229, 288 Pac. 913.

In these decisions, the courts apply the rule that words and phrases contained in contracts and statutes will be construed in the light of common understanding and usage, rather than in a technical sense.

In the case last cited, the rationale of the decisions was stated by this court as follows:

"The words must be read in a sense which harmonizes with the subject-matter and the general purpose and object of the amendment, consistent of course with the language itself. The words must be understood not as the words of the civil service commission, or the city council, or the mayor, or the city attorney, but as the words of the voters who adopted the amendment. They are to be understood in the common, popular way, and, in the absence of some strong and convincing reason to the contrary, not found here, they are not entitled to be considered in a technical sense inconsistent with their popular meaning. . . . After the armistice was signed, it was a most common thing to say and to understand that the war had ended. The soldiers, sailors and marines commenced at once to return in large numbers.

"The President in his message on November 11, 1918, giving formal and official information to Congress, and, at the same time, by that means, speaking to all the people of

the United States, after enumerating the thirty-five articles of the armistice that had been signed, immediately said: 'The war thus comes to an end.' Those words had a popular meaning. Everybody understood them. The war was over, because, as it was further said in that message, 'having accepted the terms of the armistice, it will be impossible for the German command to renew it.' "

While we are persuaded that this and kindred decisions are sound in reason and in their application of a fundamental rule in the construction of contracts and statutes, it is, in the light of the allegations of the amended complaint before us, unnecessary to adopt them to the full extent of their implication. For it is alleged that the parties, at the time they entered into the contract, understood and meant by the word "duration" the period of "actual hostilities with the enemy"; and by the term "end of the war," they understood and meant "the cessation of actual hostilities by the surrender of the last remaining enemy of the war."

The specific question for us to determine on the record, therefore, is whether the understanding and intent of the parties in the use of the word "duration" and the term "end of the war" is subject to proof by evidence extraneous to the contract. In the light of the two lines of decisions, there can be no doubt that it is. For, when the terms of a contract are susceptible of two interpretations having different legal consequences, it is competent to prove the understanding and intent the parties had in mind in using them. Such a situation simply presents an ambiguity in the contract which makes it subject to a cardinal exception to the parol evidence rule. *Hunter v. Wenatchee Land Co.*, 50 Wash. 438, 97 Pac. 494; *Leavenworth State Bank v. Cashmere Apple Co.*, 118 Wash. 356, 204 Pac. 5; *State v. Comer*, 176 Wash. 257, 28 P. (2d) 1027; *Ridder v. Blethen*, 24 Wn. (2d) 552, 166 P. (2d) 834; *Moses Land Scrip & Realty Co. v. Stack-Gibbs Lbr. Co.*, 56 Wash. 529, 106 Pac. 207; *Carr v. Jones*, 29 Wash. 78, 69 Pac. 646. In the case last cited, this court said:

"It is next assigned that the court erred in admitting evidence to vary and contradict the terms of the note. The evidence referred to related to what was intended by the

language of the note and by the parties, as alleged in the complaint. . . . Standing alone and unexplained, the note, in the respect mentioned, it seems to us, is indefinite and uncertain, and is easily susceptible of two constructions. It was, therefore, proper to admit oral testimony to explain the terms of the note in the light of the intention of the parties when it was made. Appellant urges the well-known rule that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument, and the authorities cited are to that point. The rule is probably one of universal application. The writing cannot be contradicted or varied by parol evidence, and when its meaning is unmistakable no parol testimony is needed or proper. But when the language is such as renders its meaning doubtful, resort must be had to other testimony in order to ascertain the meaning and intent of the parties by the language used. Such evidence is restricted to the interpretation of the language used, and its only purpose is to enable the court or jury to determine what the language really means. Wharton, Evidence (3rd ed.), § 937, and cases cited."

The judgment is reversed and the cause remanded, with direction to overrule the demurrer to the amended complaint.

BEALS, C. J., ROBINSON, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—The majority opinion is violative of the rule that averments in a pleading as to the meaning and interpretation of a writing made a part of such pleading are not admitted by a demurrer. If the parties meant by the term "duration" that, at the time of entering into the agreement out of which this controversy arose, it was the intention of the parties that the option for repurchase would be effective upon the cessation of actual hostilities, that meaning should have been written into the instrument.

A pleading is construed on demurrer to allege all the facts that can be implied by fair and reasonable intendment from the facts expressly stated. A statement of a necessary substantial fact—what the parties may have meant by the term "duration"—which has been omitted from the contract, cannot be read into a pleading. A fact (if it be a fact that the parties meant by the term "duration" the cessation of

actual hostilities) is not well pleaded when it is to be inferred only as a conclusion from other facts stated which are not inconsistent with an opposite conclusion. The facts stated are not inconsistent with the conclusion that the parties meant termination of a state of war by legislative resolution or executive proclamation. The inference does not logically and necessarily follow from the facts pleaded that the parties intended by their contract to provide that the option for repurchase should be effective upon the cessation of actual hostilities.

The majority takes judicial notice that the war is ended. I agree that we may take judicial notice that actual hostilities have ceased, which position is consistent with the one that this writer took in *State ex rel. Huff v. Reeves,* 5 Wn. (2d) 637, 106 P. (2d) 729, 130 A. L. R. 1465, that this court should take judicial notice that the communist party advocates the overthrow of the government by force and violence. While we are in a state of semi *de facto* peace (two of our planes were shot down in Europe a few days ago), we are in a state of *de jure* war.

I concur in the view of the trial court that the termination of a state of war is a political, rather than a judicial, question and may be brought about only by legislative resolution or executive proclamation.

The judgment should be affirmed.