[No. 5723–2–III.   Division Three.   August 2, 1984.]

BENJAMIN C. COOLEY, *Appellant,* v. ROBERT L.
HOLLISTER, JR., *Respondent.*

*Ronald E. Farley* and *Hodge, Grosse, Logerwell & Farley,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Donald Cofer, Assistant,* for respondent.

McINTURFF, J.—The Department of Retirement Systems refused, after first agreeing, to include "retirement incentive" pay in a college instructor's last year's salary when calculating the instructor's retirement allowance. The Superior Court affirmed the Department's decision. We reverse.

Benjamin C. Cooley, a respected, tenured math instructor at Wenatchee Valley College, retired in May 1980 at the age of 63 after 15 years of employment. Mr. Cooley was a member of a bargaining unit of academic employees. On January 17, 1979, the college and the bargaining unit entered into a written negotiated agreement governing wages and working conditions which stated the college employer agreed to provide every member of the bargaining unit, before the employee began his professional duties, with a written agreement "delineat[ing] the terms of employment including all conditions and responsibilities" and that the agreement would conform with the terms of the collective bargaining contract and with the laws of Washington. This master contract further provided previous agreements merged into the bargaining contract and later oral agreements could not "add to or supersede" the contract. Finally, the master contract included the following passage:

> A retirement incentive of $3,000 shall be added to the salary of each academic employee upon their commitment to retire at the end of the 1979–80 academic year. This request must be in writing to the college president

before October 1, 1979.

Mr. Cooley's individual employment agreement signed in September 1979 states:

> It is agreed by the Board of Trustees . . . and Benjamin Cooley that the Employee . . . is to *perform such duties as are assigned or reassigned* by the president or his designee. . . . The Academic Employee's salary shall be as follows:
>
> Base Salary    $23,330.00
> Allowances      3,000.00 For Retirement Incentive
> Total Salary   $26,330.00
>
> . . . This contract supersedes all previous employment contracts with said Employee. . . .

(Italics ours.)

On September 20, 1979, Mr. Cooley gave written notice to the college president that he intended to retire at the end of the 1979–80 academic year and that the notice was contingent upon the addition to his salary of the $3,000 retirement incentive pay.

The $3,000 was reported by the college as "earnable compensation" and retirement contributions were withheld from this sum in addition to that withheld from his base salary. Eight months after he retired and was receiving retirement pay, Mr. Cooley was notified this pay was to be adjusted downward about $30 a month because the incentive pay did not qualify as earnable compensation. Mr. Cooley returned this amount as requested, but the Department has never refunded the amount retained from the retiree's incentive pay.

Mr. Cooley requested an administrative hearing where only he and Dr. Davis, president of the college, testified. The Department did not put on a case, choosing instead to rely upon the testimony of these two witnesses. Dr. Davis testified that he, the Board of Trustees which negotiated the collective bargaining agreement, and the faculty members intended the retirement incentive pay be considered salary for which a retiring employee had to perform extra "transition" services during the last year of employment. The only retiree who has received the $3,000 without per-

forming extra duties left in such a fashion that transitional duties were not possible, and the college specifically excluded that $3,000 when computing this individual's employment compensation for retirement contribution purposes. Dr. Davis also opined that at the time the contract was negotiated they were not aware the Department would take the position it could control salary setting at the college. Therefore, no thought was put into the terminology "retirement incentive."

Mr. Cooley testified he retired relying on the fact a $3,000 incentive would be added to his salary and computed as part of his retirement pay and was assured by the administration, the deans, the faculty and faculty negotiators that it would be a part of his earnable compensation. Mr. Cooley contacted the Department before retiring and was similarly instructed after providing the Department with a copy of his contract. Mr. Cooley performed certain transitional duties during his last year including updating department records, updating and organizing the contents of a successful remedial math class he had created over the years, and acquainting his replacement with the class. Although he returned the following year for about a week to complete this assignment, the actual written materials were put together over the years and before his decision to retire. While Mr. Cooley was not told "in so many words", there was "a general recognition" the $3,000 was in consideration for the extra duties. On cross, Mr. Cooley testified if he were not going to receive the pay when he retired, he nevertheless would have "considered" performing the extra transitional duties, although the same was not done for him when he accepted the job.

■ An administrative decision will be upheld on factual determinations under the clearly erroneous standard "unless the court's review of the entire record leaves it with the definite and firm conviction that a mistake has been made." *Renton Educ. Ass'n v. Public Empl. Relations Comm'n*, 101 Wn.2d 435, 440, 680 P.2d 40 (1984) (interpreting *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d

317, 323–24, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983)). When reviewing questions of law under the administrative procedure act, RCW 34.04, an appellate court substitutes its determination for that of the agency, although the agency's conclusion is entitled to "substantial weight". *Renton,* at 440–41. With mixed questions of law and fact, the reviewing court, again, does not try the facts de novo, but determines the law independently of the agency's decisions and applies it to the facts as found by the agency unless the findings are clearly erroneous. *Renton,* at 441.

Mr. Cooley first challenges as clearly erroneous the agency finding the $3,000 retirement incentive payment was in exchange for his providing written notice of his commitment to retire under the collective bargaining agreement rather than for services rendered for purposes of meeting the statutory "earnable income" definition for calculating his retirement allowance.

At the time of this agency action, retirement benefits were based on "earnable compensation" defined as "all salaries and wages paid by an employer to an employee member of the retirement system for *personal services* rendered during a fiscal year." (Italics ours.) RCW 41.32-.010(11)(a). *See also* WAC 415–112–410 (earnable compensation includes "all salary" for "all . . . personal services for which salaries or wages are paid by the employer to the employee member of the teachers' retirement system.").

The Department concedes the undisputed testimony was that the parties to the negotiated collective bargaining agreement contemplated faculty members receiving retirement incentive pay would, in exchange, perform extra duties. Regardless, it is argued, the agreement is integrated and unambiguously manifests the parties' intent that nothing was required in exchange for the $3,000, since the contract did not state performance of extra duties was a condition to receipt of payment. So, it is asserted, this court must garner the intent of the contracting parties from the agreement only, without considering the subjective under-

standing of the parties despite the fact both shared the same intent.

In Washington, it is settled law that the parol evidence rule is not a device for exclusion, but a rule of substantive law. *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 770 n.5, 677 P.2d 773 (1984) (citing *Becker v. Lagerquist Bros.*, 55 Wn.2d 425, 348 P.2d 423 (1960)). Therefore, regardless of whether, as here, it is admitted without objection, if the rule applies, the evidence is not competent and may not be considered as having probative value. *Fleetham v. Schneekloth*, 52 Wn.2d 176, 179, 324 P.2d 429 (1958).

Under the bargaining agreement, the college, or "employer", promised to put the employee's duties into writing. Also, until oral argument before this court, the appellant did not contend the agreement was other than integrated, that is, intended by the parties as a final statement of the agreement's terms. Thus, extrinsic evidence may not be used to vary, contradict, or add to the writing. Comment, *Parol Evidence in Washington: The Use of Extrinsic Evidence To Address the Integration and Interpretation of Documents*, 52 Wash. L. Rev. 923, 923 n.5 (1977). *See also Fleetham*, at 179 (as a matter of substantive law, absent accident, fraud or mutual mistake, contemporaneous oral agreements merge into the final agreement).

Nevertheless, as to the separate matter of contract interpretation, or giving meaning to the parties' language, extrinsic evidence may be used to explain contract wording, Comment, 52 Wash. L. Rev. at 924 n.6, since such evidence does not change the terms of the agreement. The Washington courts have espoused various tests for determining the extent to which courts may consider evidence offered to interpret language which is not patently ambiguous in the integrated contract. *Compare Carroll Constr. Co. v. Smith*, 37 Wn.2d 322, 331, 223 P.2d 606 (1950) (not requiring ambiguity but concluding the best way to interpret was for the court to put itself in the place of the parties at the time of contracting ("context rule")) *and Fleetham*, at 179

(requiring ambiguity ("four corners rule")) *with* the hybrid approach taken in *Jones v. Hollingsworth,* 88 Wn.2d 322, 326, 560 P.2d 348 (1977) (where intent is "clearly evident", the written instrument governs).

Although considering language which was unclear, we have held that courts

> ". . . are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described."

*Hackney v. Sunset Beach Invs.,* 31 Wn. App. 596, 601, 644 P.2d 138 (1982) (quoting *Leavenworth State Bank v. Cashmere Apple Co.,* 118 Wash. 356, 361, 204 P. 5 (1922) (quoting from 6 R.C.L. 849)).

We hold that Dr. Davis' testimony was unnecessary to explain the conditions of employment and retirement incentive passages from the collective bargaining agreement. However, the testimony of surrounding circumstances and intent was necessary to explain or clarify the unclear provision in Mr. Cooley's later individual employment contract that he was "to perform such duties as are assigned or reassigned by the president . . ." *See Dorward v. ILWU–PMA Pension Plan,* 75 Wn.2d 478, 483, 452 P.2d 258 (1969), where the court held an enforceable contract will arise even when a pensioner "does not know the precise terms of the pension agreement." This result does not produce a conflict between the bargaining agreement and later employment contract. First, the earlier agreement places the burden on the employer, and not on the employee, to delineate the employee's responsibilities in writing. Second, and more importantly, the responsibilities are delineated within the meaning of the earlier master agreement: "such duties as are assigned". As explained in the testimony, a football coach is paid extra for performing

coaching duties, but the individual employment contract does not specify that he must hold five practices a week for his extra stipend, although he is required to do so.

Because the $3,000 was in exchange for extra personal services by the retiree, we must further conclude in this instance the extra salary was "earnable compensation" for purposes of calculating retirement pay. The Department argues the purpose of the contractual retirement provision was to induce "older" faculty members to voluntarily retire. However, the Department points to no evidence in the record to support its proposition, and Dr. Davis' testimony is to the contrary.

Next, the Department maintains that while statutory interpretation of the term "earnable compensation" has not been addressed in this state, other states have taken an actuarial approach. That is, one approach has been to hold that *ad hoc* salary increases at retirement to make up for the failure to grant salary increases in the past for fiscal reasons jeopardizes the soundness of the retirement fund because there are no past contributions to build the fund. *Board of Trustees v. La Tronica,* 81 N.J. Super. 461, 196 A.2d 7 (1963); *accord, Boston Ass'n of Sch. Adm'rs & Supervisors v. Boston Retirement Bd.,* 383 Mass. 336, 419 N.E.2d 277 (1981). Thus, argues the Department, the fact the employer invented a service to justify the payment should not thwart this fiscally sound insurance approach. Mr. Cooley effectively distinguishes the actuary cases by noting extra services were provided here; this was done under an inclusive rather than limiting statute, and he paid a retirement contribution from the $3,000 which the State has kept.

■ Washington has not demonstrated a tendency toward the New Jersey and Massachusetts actuarial approach. *But see Newschwander v. Board of Trustees of Wash. State Teachers' Retirement Sys.,* 94 Wn.2d 701, 709–10, 620 P.2d 88 (1980) (where the employee made no contributions to the fund during the highest compensated years of service, actuarial considerations applied in pension

computation). In *Dorward*, 75 Wn.2d at 483, the court held pension plans are not gratuities, but instead are deferred compensation for services rendered. There, the court took judicial notice that pension plan rights are generally obtained "at the cost of possible wage increases", and the worker, in exchange for pension rights, also loses job mobility. The Supreme Court has also recognized that "[t]he importance of pension rights is beyond dispute," in effect, withheld pay "to induce long–continued and faithful service." *Crabtree v. Department of Retirement Sys.*, 101 Wn.2d 552, 556, 681 P.2d 245 (1984). Noting Washington's rule of liberally construing pension legislation, *Hanson v. Seattle*, 80 Wn.2d 242, 247, 493 P.2d 775 (1972), we therefore conclude the agreement between the college and the retiree to exchange extra needed services for "incentive" pay does not run afoul of the collective bargaining agreement or the earnable compensation statute.

In so concluding, we are mindful that 2 years after Mr. Cooley retired, the law changed to prohibit some educational employers from including as earnable compensation any payments made for extra services which could be characterized as partially inducing the employee to retire. Laws of 1982, 1st Ex. Sess., ch. 10, § 1, p. 1038, codified at RCW 28A.58.098.[1] However, that statute specifically states it is

---

[1]RCW 28A.58.098 provides in part:

"(1) No school district board of directors or administrators may: . . .

"(b) Allow any payment to an employee which is partially or fully conditioned on the termination or retirement of the employee, except as provided in subsection (2) of this section.

"(2) A school district board of directors may compensate an employee for termination of the employee's contract in accordance with the termination provisions of the contract. If no such provisions exist the compensation must be reasonable based on the proportion of the uncompleted contract. Compensation received under this subsection shall not be included for the purposes of computing a retirement allowance under any public retirement system in this state.

"(3) Provisions of any contract in force on March 27, 1982, which conflict with the requirements of this section shall continue in effect until contract expiration. After expiration, any new contract including any renewal, extension, amendment or modification of an existing contract executed between the parties shall be consistent with this section."

prospective only. Moreover, a state's obligation to pay a pension is contractual in nature, vesting at the time the employee enters public service, and this right may not later be impaired by statute preventing inclusion of value earlier accrued. *See, e.g., Crabtree,* 101 Wn.2d at 556–57; *Washington Fed'n of State Employees, Coun. 28 v. State,* 101 Wn.2d 536, 541, 682 P.2d 869 (1984) (citing *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956)); *Washington Fed'n of State Employees, Coun. 28 v. State,* 98 Wn.2d 677, 658 P.2d 634 (1983); *Horowitz v. Department of Retirement Sys.,* 96 Wn.2d 468, 635 P.2d 1078 (1981). *See also Washington Ass'n of Cy. Officials v. Washington Pub. Employees' Retirement Sys. Bd.,* 89 Wn.2d 729, 732, 575 P.2d 230 (1978) (holding the statutory term "final compensation", used to calculate pension payments, to include lump sum termination benefits for vested employees, although a new statute specifically excluded such benefits).

Since the college administrators had the authority to systematically require extra services for incentive pay, and because extra services were properly exchanged under written contract in Mr. Cooley's case, we do not address the further issues, raised by the appellant, of an asserted later oral agreement or whether the doctrine of equitable estoppel applies against the Department.

Accordingly, we reverse and remand for recalculation and payment of retirement allowances.

THOMPSON, J., concurs.

MUNSON, C.J. (dissenting)—I would affirm the decision of the Superior Court and the Department of Retirement Systems because I am not left with the definite and firm conviction a mistake has been made in this case. *See Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 440, 680 P.2d 40 (1984). Contrary to the majority opinion, administrative determinations of fact are, for all practical purposes, binding.

Here, Wenatchee Valley College and its teachers devised

a plan for early retirement where a teacher would receive a $3,000 retirement incentive payment in exchange for written notice of a commitment to retire. The Department in deciding the factual issue of extra work apparently did not believe the retirement incentive payment was in any way connected with Mr. Cooley's additional undertakings during his last year of employment.

Since the $3,000 payment was not for services rendered, it did not qualify as "earnable compensation" as that term is defined in RCW 41.32.010(11)(a). I therefore dissent.

After modification, further reconsideration denied November 5, 1984.

Review denied by Supreme Court January 18, 1985.